FILED15 APR '19 16:20USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:19-cr-00132-MO |
| v. | INFORMATION |
| BRIAN A. OLIVER, | 18 U.S.C. §§ 1349 and 1956(h) |
| | Forfeiture Allegations |
| Defendant. | UNDER SEAL |

THE UNITED STATES ATTORNEY CHARGES:

GENERAL ALLEGATIONS

At all times relevant to this Information:

1. Brian A. Oliver (hereinafter referred to as defendant), age 54, was a resident of Aurora, Oregon.

2. Defendant was an owner of Aequitas Management, LLC, a company that was located in Lake Oswego, Oregon, and was Executive Vice President of several other Aequitas-related companies, including Aequitas Holdings, LLC, Aequitas Commercial Finance, LLC, Aequitas Capital Management, Inc., and Aequitas Investment Management, LLC, which were also located in Lake Oswego, Oregon.

3. Defendant and others used Aequitas Commercial Finance and other Aequitas-related companies to solicit investors through the issuance of promissory notes and interests in Aequitas-created investment funds, many of which were purportedly backed by trade receivables

**INFORMATION – *United States v. Brian Oliver***

in education, health care, transportation, and other consumer credit areas. Defendant was the primary fundraiser for the Aequitas-related companies and their investment products and was a member of the management and executive committees responsible for the operation and management of the Aequitas-related companies, their investment products, and their use of investor money.

## COUNT 1
### (Conspiracy to Commit Mail and Wire Fraud)
### (18 U.S.C. § 1349)

4. Beginning no later than in or about June 2014, and continuing through in or about February 2016, in the District of Oregon and elsewhere, defendant and others, known and unknown, knowingly and willfully conspired, combined, confederated, and agreed with each other and with others, known and unknown, to commit mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

### MANNER AND MEANS AND SCHEME TO DEFRAUD

5. Defendants and others, known and unknown, used the following manner and means to carry out the conspiracy and scheme to defraud:

6. Defendant and others solicited individuals to invest in a variety of notes and investment funds, many of which were allegedly backed by trade receivables in education, health care, transportation, and other consumer credit areas.

7. Defendant and others created and approved, and caused to be created and approved, promotional and other investment materials that contained material misrepresentations, including material misrepresentations about the uses of investor moneys, the financial health and strength of the Aequitas companies, their investments and investment strategies, and the inherent risks of those investments and investment strategies.

8. Defendant and others mailed and emailed, and caused others to mail and email, the promotional and other investment materials to investors and investment advisors.

9. These promotional materials also omitted material facts, including that the Aequitas companies were consistently in liquidity and cash-flow crises, that defendant and others used the majority of investor money to repay investors and to pay operating expenses rather than buy trade receivables, and that there was insufficient collateral to secure the notes.

10. Defendant and others made similar material misrepresentations and omissions when soliciting investors and discussing the status of investments with investors in person.

11. In order to address liquidity and cash-flow problems, defendant and others offered additional notes with higher interest rates in order to entice investors. Defendant and others led investors to believe that the majority of the investors' money would be used to buy trade receivables or other income-generating assets. Instead, defendant and others used the majority of investor funds to pay operating costs and to repay other investors.

12. Defendant and others used an intercompany loan and intercompany transfers of money to prop up Aequitas Commercial Finance and the other Aequitas entities and to mislead investors. Defendant and others counted the intercompany note as an asset even though defendant and others knew that that the note was woefully under-collateralized and could not be repaid without the occurrence of several speculative contingencies that were not disclosed to investors.

13. Based on defendant's and others' misrepresentations and omissions, including material misrepresentations and omissions of material facts about the nature of the various investments and investment strategies, the use of investor proceeds, and the risk of the investments, individuals invested almost $350 million between January 2014 and January 2016.

**INFORMATION – *United States v. Brian Oliver*** Page 3

14. Defendant and others caused investors to mail their investments or to transfer their investments via wire.

15. Rather than use or invest the money as implied or promised, defendant and others used investor money to repay prior investors and to pay the operating expenses of the Aequitas enterprise. Those costs included lucrative salaries for defendant and others, private jets and pilots, office renovations, an office expansion in New York, and extravagant staff, management, ownership, and investor events.

16. Despite accumulating operating losses that defendant and others concealed in the above-described intercompany loan, defendant and others continued to raise funds from new investors and convinced prior investors to forgo redemptions and to invest additional money.

17. Defendant and others caused investor money to be transferred via wire between various financial accounts to facilitate the conspiracy and scheme to defraud, including by diverting investor money.

18. Defendant and others intentionally did not disclose the following material facts to outside accounting and legal firms: the Aequitas companies were consistently in liquidity and cash-flow crises; defendant and others used the majority of investor money to repay investors and to pay operating expenses rather than buy trade receivables or other investments; and there was insufficient collateral to secure the notes sold to investors.

19. Defendant and others also failed to disclose the truth about the intercompany loan, including that it was used to conceal accumulating operating losses and that it was severely under collateralized.

///

///

20. Due to defendant's and others' fraudulent conduct investors lost more than $600 million.

All in violation of 18 U.S.C. § 1349.

## COUNT 2
### (Conspiracy to Commit Money Laundering)
### (18 U.S.C. § 1956(h))

21. Paragraphs 1 through 20 of Count 1 are incorporated herein.

22. Beginning no later than in or about June 2014 and continuing through in or about February 2016, in the District of Oregon and elsewhere, defendant and others, known and unknown, did knowingly combine, conspire, and agree with each other and with others, known and unknown, to knowingly engage and to attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000 that was derived from a specified unlawful activity (mail and wire fraud) in violation of 18 U.S.C. § 1957.

### MANNER AND MEANS OF THE CONSPIRACY

23. The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

24. Defendant and others, known and unknown, engaged in the scheme to defraud set forth in Count 1 of this Information, raising almost $350 million between January 2014 and February 2016.

25. Defendant and others engaged in or caused the financial transactions set forth below, each involving more than $10,000 from the proceeds of the scheme to defraud described in Count 1:

- On or about September 29, 2015, a $1 million transfer via wire from an account ending in 7792 to an account ending in 9377;

- On or about September 29, 2015, a $1.5 million transfer via wire from an account ending in 7792 to an account ending in 9377;

- On or about October 2, 2015, a $2.5 million transfer via wire from an account ending in 7792 to an account ending in 9377;

- On or about December 8, 2015, a $700,000 transfer via wire from an account ending in 7834 to an account ending in 7815;

- On or about December 9, 2015, a $150,000 transfer via wire from an account ending in 7834 to an account ending in 7815;

- On or about December 10, 2015, a $350,000 transfer via wire from an account ending in 7834 to an account ending in 7815; and

- On or about December 10, 2015, a $510,000 transfer via wire from an account ending in 7834 to an account ending in 7815.

## FIRST FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

26. Upon conviction of one or more of the offenses alleged in Count 1 of this Information, defendant shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the violations, including but not limited to a money judgment for a sum of money equal to the amount of property involved in the conspiracy.

27. If the above-described forfeitable property, as a result of any act or omission of defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

## SECOND FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(1))

28. Upon conviction of the offenses alleged in Count 2 of this Information, defendant shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1), any and all property, real or personal, involved in the money laundering offenses and all property traceable to such property, including but not limited to a money judgment for a sum of money equal to the amount of property involved in those offenses.

29. If the above-described forfeitable property, as a result of any act or omission of defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

Dated: April 15, 2019                    Respectfully submitted,

                                         BILLY J. WILLIAMS
                                         United States Attorney

                                         SCOTT E. BRADFORD, OSB #062824
                                         RYAN W. BOUNDS, OSB #00012
                                         Assistant United States Attorneys